LUCIEN B. WILLIAMS *vs.* PHILEMON F. ROBBINS & others.

A conveyance of an equity of redemption by a mortgagor to a mortgagee, without the payment of any new consideration and with intent to delay or defeat creditors, cannot be regarded as a voluntary conveyance, and therefore void against creditors of the mortgagor, if the amount of the debt secured by the mortgage is equal to the whole value of the land.

Evidence of a transfer of personal property with fraudulent intent on the part of both parties to hinder and delay the creditors of the vendor is not admissible for the purpose of impeaching a conveyance between the same parties of an equity of redemption of mortgaged land, made three months previously, apparently valid and not shown to have been in any way connected with the subsequent transaction.

BILL IN EQUITY by the assignee in insolvency of Alfred Copeland to redeem a shop and water power in Huntington from two mortgages by Copeland, (subject to a prior mortgage for $ 1,000,) one dated July 26th 1855 for $ 2,425, and one dated July 27th 1855 for $ 2,500, to Philemon F. Robbins and Joseph Winship, under whom the other defendants claimed title; and alleging that a quitclaim deed of the equity of redemption, made by Copeland to Robbins and Winship on the 30th of August 1856, was without consideration, and made and received with the intent of hindering, delaying and defrauding Copeland's creditors; and that on the 30th of September 1856 Robbins and Winship caused the estate to be sold by auction under a power of sale in one of the mortgages, and a deed thereof to be made to Benjamin F. Whipple, who on the same day executed and delivered a reconveyance thereof to them.

At the trial in the superior court, of an issue framed to try the validity of these three deeds, the parties agreed in writing that it should be taken as if specially found by the verdict that in August 1856 Robbins and Winship requested Copeland to have the estate sold by auction under the power in the mortgage, and to get some one to bid $ 6,000 for it for them, and, if any one bid more, to let it go; that Copeland accordingly requested Whipple, as a favor to him, to attend the sale and bid $ 6,000; that no one was present at the sale but the auctioneer, Copeland and his son, and Whipple, and the only bid made

was $ 6,000, for which the estate was struck off to Whipple, who bid merely pursuant to Copeland's request, and had neither the means nor the intent of buying the estate for himself; that after the sale, without any communication between Copeland or Robbins and Winship with Whipple, a deed from Robbins and Winship as attorneys for Copeland to Whipple was brought to Whipple, together with a deed from himself to them, which he executed, and both deeds were then taken by Copeland and sent to Robbins and Winship, with the earlier quitclaim deed of the equity of redemption from himself to them. The plaintiff proved that for a considerable period before these conveyances Copeland was deeply indebted and embarrassed in business; that a large portion of the debts proved against his estate in insolvency consisted of notes of an earlier date than these deeds ; and that these conveyances were made with a fraudulent purpose.

The plaintiff offered no evidence of the value of the estate, nor of the amount due on the mortgages to Robbins and Winship. The defendants introduced evidence that this value did not exceed $ 6,000, and that no part of the mortgage debts had been paid.

The plaintiff also introduced evidence tending to show that about the 1st of July 1856 Copeland said to Whipple, his foreman, that he had more than enough property to pay his debts, but must make some arrangement to prevent his creditors from suing him and attaching his property, and with that purpose on the 2d of July 1856 made a bill of sale of all his personal property, about $ 10,000 in value, to Whipple, who had no means of paying for the property, except from the property itself, and gave his notes for $ 10,000 without security, and Copeland told him that he might say, if called upon to testify in court about the arrangement, that it was made on account of Copeland's ill health; that the business for six months after this was conducted under the name of B. F. Whipple & Co., and Copeland told Whipple that he wanted everything to go on for six months as it was, because, if any stir was made about it, creditors might break it up. The plaintiff also offered evidence, which was excluded, that about the 1st of January 1857 Whipple, at Cope-

land's request, signed a bill of sale of all the personal property to Robbins and Winship, for which Copeland handed to him a note of Robbins and Winship for $ 1,000, and immediately exchanged the previous notes of Whipple for $ 10,000 therefor· and that afterwards, until the time of Copeland's insolvency the business was carried on for Robbins and Winship in the name of " A. Copeland, agent."

*Rockwell,* J. ruled that " transactions between the defendants and Copeland relating to the real estate in controversy, and their treatment and occupation of that, might be shown; but that their management of the business and transactions relating to the personal property were not admissible ; " and refused to instruct the jury, as requested by the plaintiff, that " it being proved that no actual consideration was paid for the conveyance of the right of redemption by Copeland to Robbins and Winship, and that the notes secured by the mortgages were none of them given up, but still retained by the mortgagees, the conveyance was void in law against the creditors of Copeland, if made by him with a fraudulent intent, without proof by testimony that Robbins and Winship had, or participated in, such fraudulent intent ; " but did instruct them " that the plaintiff must satisfy the jury that Robbins and Winship had or participated in some purpose to hinder, delay, defeat or defraud the creditors of Copeland; that on this point it was proper to consider the value of the mortgaged premises, and the amount due on the mortgages, and whether the premises were worth more, or were supposed by the parties at the time of the conveyance of the equity to be worth more, than the amount due; that if the premises were not worth more than the amount due, and were not at the time believed by the parties to be worth more, and the object of the defendants was merely to perfect their title to the property, for the purpose of paying the debts secured by the mortgage, the jury would consider whether it was a fraud ; and that the mere intent to secure the debt and perfect the title would not be fraudulent on the part of the defendants."

The jury returned a general verdict for the defendants; and

in answer to a question of the court, found that " Alfred Copeland at the time of the conveyances had the intent to delay or defeat his creditors in the collection of their debts." The plaintiff alleged exceptions.

*J. Wells*, for the plaintiff. The ruling of the court was, in effect, that if the mortgage debt equalled the value of the property, there could be no fraud; and required proof of actual and positive purpose to defraud on the part of defendants, allowed the jury to consider the small value of the right conveyed as disproving such intent, overlooked the fact that the notes were not given up or discharged, and was inconsistent with the purpose of the issue. The grantor was deeply indebted, and intended fraud upon his creditors; the conveyance was merely voluntary; and knowledge of the grantor's purpose is all that it is necessary to prove, and may be presumed from absence of consideration or from circumstances. *Parkman* v. *Welch*, 19 Pick. 231. *Widgery* v. *Haskell*, 5 Mass. 144. *Russell* v. *Woodward*, 10 Pick. 408. *Williams* v. *Thompson*, 13 Pick. 298. *Osborn v. Adams*, 18 Pick. 245. *Peirce* v. *Thompson*, 17 Pick. 391. *Clapp* v. *Tirrell*, 20 Pick. 247. *Gunn* v. *Butler*, 18 Pick. 248. *Norton* v. *Norton*, 5 Cush. 524. *Sexton* v. *Wheaton*, 8 Wheat. 229. *Hinde* v. *Longworth*, 11 Wheat. 199. 1 Story Eq. Jur. §§ 353 – 359. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c.* 28, §§ 15 – 17. Roberts on Conveyances, 61. *Sands* v. *Hildreth*, 14 Johns. 493. *Bailey* v. *Burton*, 8 Wend. 339. The conveyances of the real and the personal property were parts of one transaction, and the evidence tending to show participation by the defendants in a fraudulent disposition of the personal property and business should have been admitted. *Foster* v. *Hall*, 12 Pick. 89. *Bridge* v. *Eggleston*, 14 Mass. 245. *Somes* y. *Skinner*, 16 Mass. 348. *Cook* v. *Moore*, 11 Cush. 213.

*R. A. Chapman*, for the defendants. A foreclosure of a mortgage operates as a payment of the debt; and so must a sale under a power without a surrender or discharge of the notes. The conveyance of the equity of redemption was therefore not voluntary. *Amory* v. *Fairbanks*, 3 Mass. 562. *West* v. *Chamberlin*, 8 Pick. 336. *Hedge* v. *Holmes*, 10 Pick. 381.

*Briggs* v. *Richmond,* 10 Pick. 396. The evidence of fraud in the transfer of the personal property was properly rejected, because that transaction was in no way connected with the conveyance of the equity of redemption. *Somes* v. *Skinner,* 16 Mass. 360. *Rowley* v. *Bigelow,* 12 Pick. 307. *Malton* v. *Nesbit,* 1 Car. & P. 70. *Boldron* v. *Widdows,* 1 Car. & P. 65. *Keith* v. *Taylor,* 3 Verm. 153. *Whiting* v. *Johnson,* 11 S. & R. 328. 1 Greenl. Ev. §§ 50 – 54.

MERRICK, J. A conveyance of the equity of redemption by a mortgagor to a mortgagee, without the payment of any new consideration, cannot be considered a voluntary convey ance and void as against creditors, when the amount due on the note or other obligation, the payment of which is secured by the mortgage, is equal to the whole value of the mortgaged premises. It is not like the conveyance of the same estate to a stranger. By operation of law, and without any special agreement of the parties on the subject, it effects a discharge of the mortgage debt, either wholly if the estate is sufficient, or *pro rata* if of less value than the amount due. To make such a transaction, in any just sense, a voluntary conveyance as against creditors, it must be made to appear that the estate was of greater value than the debt; otherwise, it is apparent that there is a valuable and entirely adequate consideration for the conveyance, namely, the discharge of a debt of an amount equal to the value of the entire estate. As in this case there was no evidence sufficient to warrant the jury in finding that the land was worth anything more than the amount of the incumbrance upon it, the plaintiff has no just ground of exception to the ruling of the court upon the question of fraud; and the instructions which were refused were properly withheld, because they contained in terms an assumption which cannot be supported.

In regard to the rejection of the evidence offered by the plaintiff, the exception taken must also be overruled. While we do not mean to decide that the dealings between the grantor and grantee, after the time of the conveyance alleged to be fraudulent, may not in some cases be admissible, as when they appear to be parts of the same transaction, or are so near in point of

Williams *v.* Robbins & others.

time as fairly to denote or indicate the intent or state of mind of the grantee, we do not think that the evidence offered to be produced by the plaintiff respecting the conveyance of personal property by Whipple to the defendants comes within the principle. The two conveyances referred to were remote from each other in point of time, and had relation to property entirely different in character. The first was a release of a right in equity of redeeming mortgaged real estate, and was perfected early in October 1856; while the latter was a transfer of personal property by a bill of sale made and delivered in the succeeding month of January, an interval of at least three months intervening between these two transactions. To allow proof of the design and purpose of the parties in the latter for the purpose of showing that the former, which otherwise appears to be perfectly legal and valid as having been made upon a just and sufficient consideration, was infected by the fraudulent intention of the parties to hinder and delay the creditors of the grantor in the collection of their respective claims and demands, would authorize an effect to be given to it to which it is in no respect entitled. There was in fact no connection whatever between them. Each was the result, so far as is known from anything disclosed upon the trial, or then offered to be proved, of a distinct, separate and independent negotiation; and the one had therefore no tendency to characterize or to evince the purpose and design of the parties in the other. The authorities referred to by the counsel for the defendants fully sustain the proposition that a transaction proposed to be proved for the purpose of invalidating a conveyance, which is the subject of controversy, on the ground of fraud, must be shown to be so connected with it as to make it apparent that the parties had a common purpose in both, or it will not be admissible as evidence. And consequently, without tender of some proof by direct or circumstantial evidence to that effect, it is manifest that the evidence offered by the plaintiff, of the purpose and design of the parties to the transfer of personal property by Whipple to the defendants, was irrelative to the issue to be determined, and therefore incompetent.

*Exceptions overruled*